IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

Louise Johnson,                    )
                                   )
            Plaintiff,             )
                                   )        Civil Action No. 1:12-3277-SB
v.                                 )
                                   )
Carolyn W. Colvin, Acting          )
Commissioner of the Social         )        **ORDER**
Security Administration,           )
                                   )
            Defendant.             )
_____)



    This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the Commissioner of Social Security's ("Commissioner") final decision,

which denied the Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"). The record includes the report and recommendation ("R&R") of

United States Magistrate Judge Shiva V. Hodges, which was made in accordance with 28

U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(a), D.S.C.

    In the R&R, the Magistrate Judge recommends that the Court affirm the

Commissioner's final decision denying benefits. The Plaintiff filed timely objections to the

R&R, and the Commissioner filed a reply to the Plaintiff's objections. See 28 U.S.C. §

636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within

fourteen days after being served a copy).

### BACKGROUND

    The Plaintiff filed applications for DIB and SSI on January 7 and 25, 2010,

respectively, alleging that her disability began on January 15, 2000. The Plaintiff's

applications were denied initially and upon reconsideration. On May 9, 2011, an administrative law judge ("ALJ") held a hearing. On June 10, 2011, the ALJ issued an unfavorable decision finding that the Plaintiff was not disabled within the meaning of the Act. The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner.

The Plaintiff was forty-eight at the time of the hearing. She graduated from high school, and her past relevant work includes work as a bookkeeper and a basket assembler. She alleges that she has been unable to work since January 15, 2000.

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's R&R

The Court conducts a de novo review to those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendations contained in the report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the R&R to which the objection is made and the basis for the objection. Id.

### II.    Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied."

2

Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celecbreeze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I.    The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:



> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c) If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not,

the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a) If the answer is in the affirmative, the final consideration looks to whether the impairment precludes that claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, taking into account the claimant's medical condition, functional limitations, education, age, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since January 15, 2000. At the second step, the ALJ found the following severe impairment: bipolar disorder/affective disorder. Third, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determined that the Plaintiff is capable of performing past relevant work as a basket weaver. Even so, the ALJ proceeded to step five and also found that, in the alternative, significant jobs exist in the national economy that the Plaintiff can perform. Therefore, the ALJ found that the Plaintiff was not disabled.

**II.    The Instant Action**

In this action, the Plaintiff argues: (1) that the ALJ violated the Commissioner's

4

special technique for evaluating mental impairments by failing to acknowledge the psychotic features of the Plaintiff's mental illness and by failing to consider Listing 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders), including the Plaintiff's alleged need for a highly supportive living arrangement; and (2) that the ALJ conducted a flawed credibility analysis. The Magistrate Judge considered the Plaintiff's arguments and found them to be without merit.

Specifically, the Magistrate Judge determined that the Plaintiff failed to meet her burden of proving that she suffers from a medically-severe psychotic impairment (such as schizophrenia or post-traumatic stress disorder) because, even though she exhibited bizarre behavior in 2002 and 2007, these episodes were attributed to her bipolar disorder. The Magistrate Judge also noted that the ALJ did, in fact, reference the Plaintiff's involuntary commitment in December of 2002 in assessing the Plaintiff's severe impairments. Next, the Magistrate Judge recommended a finding that the ALJ was not required to consider Listing 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders) because the record does not contain any diagnosis falling within that Listing. The Magistrate Judge also determined that substantial evidence supports the ALJ's finding that the Plaintiff does not meet the paragraph C criteria. Finally, the Magistrate Judge found both that the ALJ gave sufficient reasons to discount the Plaintiff's credibility and that the ALJ did not err in his treatment of the Plaintiff's sister's testimony.



In her objections to the R&R, the Plaintiff first objects to the Magistrate Judge's findings regarding the ALJ's paragraph C analysis. The Plaintiff asserts that the Magistrate Judge inappropriately weighed the evidence and that the evidence supports a finding that the Plaintiff requires a highly supportive living arrangement.

5

First, although the Plaintiff does not object to this finding, the Court notes that it fully agrees with the Magistrate Judge's determination that the ALJ was not required to consider Listing 12.03, as the record does not contain any diagnosis falling within that Listing. Next, the Court also agrees with the Magistrate Judge that the ALJ did not err in finding that the evidence failed to establish the paragraph C criteria of Listing 12.04. Listing 12.04 provides in pertinent part:

> Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied:
>
> . . .
>
> C.   Medically documented history of a chronic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>    1.   Repeated episodes of decompensation, each of extended duration; or
>
>    2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment
>
>    3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. As the Magistrate Judge noted, the ALJ specifically considered the paragraph C criteria of Listing 12.04 and determined that the evidence failed to establish any of the criteria. With regard to paragraph (c)(3), the ALJ

found no evidence "of a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with indication of continued need for such arrangement." (Tr. at 14.)

In determining that substantial evidence supports the ALJ's finding, the Magistrate Judge considered the record and determined that, regardless of the definition of "highly supportive living arrangement," the record does not reveal sufficient evidence of such an arrangement. After review, the Court agrees.

The term "highly supportive living arrangement" is not a specifically defined term; however, the introductory material to the 12.00 class of Listings explains the following:

> F. *Effects of structured settings*: Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized. At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings. For these reasons, identical paragraph C criteria are included in 12.00, 12.02, 12.03, and 12.04. The paragraph C criterion of 12.06 reflects the uniqueness of agoraphobia, an anxiety disorder manifested by an overwhelming fear of leaving the home.



20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F). District courts have found a highly structured setting to exist in a prison environment, Morris v. Astrue, 2012 WL 4499348 (D.N.H. Sept. 28, 2012) (unpublished), or at a mental health organization called Go-Getters where the plaintiff lived and received treatment and medication, Handy v. Astrue, 2012 WL 1605651 (D.Md. May 4, 2012) (unpublished). In contrast, other district courts have found no highly supportive living arrangement to exist: where a plaintiff lived in a group home and

had his meals prepared and his medication distributed but was otherwise free to come and go as he pleased, Miller v. Comm'r of Soc. Security, 2014 WL 916945 (N.D. Ohio March 10, 2014); and where a plaintiff's girlfriend assisted with certain household chores and sometimes helped manage finances but where the plaintiff otherwise was able to care for his personal needs on a regular basis, Santiago v. Colvin, 2014 WL 718424 (S.D.N.Y. Feb. 25, 2014). See also Gonsalves v. Astrue, 2010 WL 1935753, *4 (D. Me. May 10, 2010) "[A] 'highly structured living arrangement' is something other than living with one's parents while taking care of most of one's personal needs and making substantial contributions to the household without a high degree of supervision; it refers to shelters or group homes, inpatient psychiatric treatment, or an inability to live on one's own.") (internal citations omitted).

Here, the ALJ noted that although the Plaintiff, who lives alone, typically does not leave her house due to nervousness, she weaves baskets for approximately seven hours per day; she goes to the store alone; she reads without difficulty; and she individually cares for her household chores. The ALJ also noted that the Plaintiff reported seeing her sister three times per week; that the Plaintiff's sister testified that the Plaintiff does not have any difficulty performing activities of daily living independently; and that the Plaintiff's sister testified that she and other family members helped ensure that the Plaintiff was compliant with her medication and did not miss doctor's appointments. After a review of the record, the Court wholly agrees with the Magistrate Judge that substantial evidence supports the ALJ's determination that the Plaintiff does not meet the paragraph C criteria and that the ALJ did not err at steps two or three of the sequential evaluation process.

The Plaintiff next objects to the Magistrate Judge's findings regarding the ALJ's

credibility analysis.  The Plaintiff asserts that it was her position all along that she could function fairly well as long as she was in her home and not subject to outside stressors, and that the ALJ ignored the very nature of her impairment.

To the contrary, the Court agrees with the Magistrate Judge that the ALJ properly evaluated the Plaintiff's credibility in accordance with Social Security Ruling 96-7p and that the ALJ provided valid reasons why the Plaintiff's allegation that she was not capable of all work was not credible.  For example, the ALJ noted that the medical evidence did not indicate that the Plaintiff's mental impairment was as limiting as she alleged.  The ALJ also noted that the Plaintiff's activities of daily living–including weaving baskets for seven hours a day, performing household chores, going to the grocery store, and reading–suggested that her symptoms are not as limiting as she alleged.  Moreover, to the extent that the Plaintiff contends that the ALJ ignored the very nature of her impairment, the Court disagrees.  Rather, a review of the ALJ's decision indicates that he considered her limitations in ultimately finding that she is capable of her past work and other work in the national economy.  The ALJ stated:

> In light of her history of bipolar disorder and her allegations that she has difficulty concentrating, I have limited her to simple, routine and repetitive tasks and find that she must avoid moderate exposure to excessive noise and vibration. Additionally, I have given deference to her testimony that she does not handle stress well in finding that she can perform an occupation that involves only occasional changes in the work setting and no production-rate or paced work.  In light of her allegations that she has difficulty interacting and getting along with others, I find that she should be limited to working in essential isolation with only occasional supervision.

(Tr. at 17.)  The Plaintiff's objection is overruled.

Finally, the Plaintiff objects to the Magistrate Judge's determination that the ALJ properly discounted the testimony of the Plaintiff's sister, Ms. Managalt.  The Plaintiff

9

1:12-cv-03277-SB    Date Filed 03/13/14    Entry Number 29    Page 10 of 10

contends that the ALJ failed to acknowledge the nature of Ms. Managalt's testimony and that the ALJ's summary dismissal of Ms. Managalt's testimony was in error.

After a close review of the record, including the transcript of the administrative hearing, the Court finds the Plaintiff's objection to be without merit.  In his decision, the ALJ accurately summarized Ms. Managalt's testimony, noting that family members help ensure that the Plaintiff takes her medication and goes to doctor's appointments.  The ALJ also noted that Ms. Managalt testified about the Plaintiff's odd behavior and past hallucinations as well as the fact that the Plaintiff sometimes does not want to communicate with others or go out in public.  (See Tr. at 6.)  Ultimately, the ALJ found Ms. Managalt's testimony to be "generally credible," but he gave little weight to Ms. Managalt's opinion that the Plaintiff is incapable of all work, finding it inconsistent with the weight of the other evidence of record.  After consideration, the Court finds no error in the ALJ's treatment of Ms. Managalt's testimony, and the Plaintiff's objection is overruled.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that the Magistrate Judge's R&R (Entry 24) is adopted and incorporated herein; the Plaintiff's objections (Entry 25) are overruled; and the Commissioner's final decision denying benefits is affirmed.

**IT IS SO ORDERED**

Sol Blatt, Jr.
Senior United States District Judge

March 13, 2014
Charleston, South Carolina

10